IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BRIAN C.,
      Plaintiff,

v.
                                                Civil No. 3:25cv98 (DJN)

FRANK BISIGNANO,
Commissioner of the
Social Security Administration,
      Defendant.

**FINAL MEMORANDUM ORDER**
**(Adopting Report and Recommendation)**

In this action, Plaintiff Brian C. ("Plaintiff") seeks review of the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") decision to deny his Title II application for disability insurance benefits and his Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court on Plaintiff's Objections to the Report and Recommendation submitted by United States Magistrate Judge Summer L. Speight on January 21, 2026 (ECF No. 18 (the "R&R")), which recommends that Plaintiff's Motion for Summary Judgment (ECF No. 14) be denied, Defendant's Motion for Summary Judgment (ECF No. 16) be granted and the final decision of the Commissioner be affirmed. (ECF No. 19 ("Objections" or "Obj.").) For the reasons set forth below, the Court OVERRULES Plaintiff's Objections and therefore DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14), GRANTS Defendant's Motion for Summary Judgment (ECF No. 16) and ADOPTS the Report and Recommendation of the Magistrate Judge (ECF No. 18).

## I.    PROCEDURAL HISTORY

On February 4, 2026, Plaintiff filed his Objections, in which he argues — as on summary judgment — that the Administrative Law Judge (the "ALJ") committed error by failing to perform a proper symptom analysis under Social Security Ruling 16-3p. In Plaintiff's telling, the ALJ erred by mischaracterizing the relevant medical evidence and improperly considering Plaintiff's treatment history and activities of daily living, as well as medical opinion evidence and prior administrative findings, in arriving at her finding that Plaintiff's description of the intensity, persistence and limiting effects of his symptoms stands inconsistent with medical and other evidence in the record.

On February 11, 2026, the Commissioner filed his Response to Plaintiff's Objections. (ECF No. 20.) No reply was filed, and the time to do so has elapsed, rendering Plaintiff's Objections ripe for the Court's review.

## II.    STANDARD OF REVIEW

A district court reviews *de novo* any part of a Magistrate Judge's disposition that a party has properly objected to. Fed. R. Civ. P. 72(b)(3); *Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). Notably, as long as the "grounds for objection are clear, district court judges must consider them *de novo*, or else run afoul of both § 636(b)(1) and Article III." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). The court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its *de novo* review, the district court analyzes the Commissioner's final decision by the same standard as the Magistrate Judge:  the Court must determine whether the ALJ's factual findings are supported by substantial evidence and whether the proper legal

standard was applied in evaluating the evidence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence requires "more than a mere scintilla of evidence but may be somewhat less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In reviewing for substantial evidence, a court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Id.*

### III.    ANALYSIS

After conducting its *de novo* review of the administrative record and considering Plaintiff's Objections, the Court finds the R&R sufficiently well-reasoned and supported by the record and applicable law. The Court begins by discussing Plaintiff's Objections, which closely parallel his allegations of error in his Motion for Summary Judgment, before providing its reasons for overruling the Objections and adopting the R&R without modification.

### A.    Plaintiff's Objections

Plaintiff's Objections center on what he alleges to be the ALJ's error in "discount[ing]" the severity of the symptoms he reported in his disability applications. (Obj. at 2.) After pointing to various instances in the record that allegedly document his struggles with sitting, standing and remaining wakeful, (*id.* at 1–2), Plaintiff proceeds to highlight what he believes constitute the ALJ and Judge Speight's errors in failing to find him disabled for benefits purposes pursuant to a proper symptom analysis.

Plaintiff begins by highlighting the objective medical evidence considered by the ALJ, which he alleges "creates a false inconsistency with Plaintiff's complaints." (*Id.* at 2.) In Plaintiff's view, "[w]hen read in full context, the cited [medical] records do not contradict Plaintiff's allegations. They corroborate them." (*Id.*) Plaintiff asserts that the ALJ "repeatedly

3

minimized or omitted . . . functional findings" concerning Plaintiff's pain and difficulty walking, among other factors, "while emphasizing isolated signs of normalcy." (*Id.* at 3; *see also id.* at 6 (accusing the ALJ of engaging in "pervasive pattern of either selectively citing evidence or including it but failing to explain how it sits in concert with [her] conclusions.").) Further, and relatedly, Plaintiff asserts that the ALJ failed to "accurately describe[] the evidence she relied upon and articulate[] a logical connection between that evidence and her conclusions," (*id.* at 3–4), and that she failed to "build an accurate and logical bridge" from the evidence to those conclusions. (*Id.* at 7 (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).) As part of this critique, Plaintiff specifically asserts that the ALJ failed to explain how the evidence supports the ALJ's finding that Plaintiff can stand and walk for four hours in an eight-hour workday. (*Id.* at 8.) Finally, Plaintiff claims that the ALJ's decision "lacks the articulated reasoning required for substantial evidence review" and therefore "cannot be affirmed." (*Id.* at 9.)

Plaintiff next objects to Judge Speight's finding that the ALJ appropriately considered Plaintiff's treatment history, which the ALJ described as "conservative and grossly outpatient." (R. at 26.) As before, Plaintiff's central objection revolves around "the absence of an explanation connecting the [treatment and objective] evidence to the ALJ's rejection of the greater severity of Plaintiff's symptoms." (Obj. at 12.) Plaintiff asserts that his course of treatment, which involved three surgeries, constituted "escalating treatment, not conservative management." (*Id.* at 10.) In addition to disputing the propriety of the term "conservative," Plaintiff further quibbles with the ALJ's characterization for "provid[ing] little analytical value in a symptom evaluation." (*Id.* at 11.) More significantly, Plaintiff asserts that the ALJ failed to explain "how that [treatment] history undermines Plaintiff's allegations." (*Id.*) Pointing to the

4

ALJ's purported failure to "articulate how a treatment course involving repeated surgeries, extended recovery, assistive device use, and consideration of further surgery is inconsistent" with Plaintiff's allegations of "severe pain, limited endurance, and unsafe ambulation," Plaintiff again asserts that the ALJ's opinion lacks the "explanatory step" of explaining how such a treatment history supports discounting Plaintiff's claims. (*Id.*)

Plaintiff proceeds to object to Judge Speight's "rationale regarding Plaintiff's activities of daily living." (*Id.* at 13.) First, Plaintiff finds fault with Judge Speight's characterization that Plaintiff's daily living activities "suggest otherwise" as to his alleged limitations, claiming that this "inferential step does not appear in the ALJ's decision" and therefore "cannot be supplied on judicial review." (*Id.*) He also criticizes Judge Speight for failing to explain how his reported activities, "when viewed as actually described, contradict Plaintiff's testimony." (*Id.* at 14.) In Plaintiff's view, Judge Speight's "shifting and conclusory reasoning underscores the absence of a clearly articulated basis for discounting Plaintiff's symptom testimony and does not permit meaningful judicial review." (*Id.* at 16.) Plaintiff also seeks to contextualize various activities described in the record, ultimately reasserting his earlier claim that the ALJ fails to "identif[y] which specific limitations were contradicted by which specific objective findings." (*Id.*)

Finally, Plaintiff turns to the ALJ's treatment of past medical opinions and prior administrative medical findings, arguing that she committed two errors in this respect. First, Plaintiff asserts that the ALJ's reliance on prior medical opinions "do[es] not displace the need for the ALJ to address the symptom analysis factors outlined in the regulation," suggesting that her doing so somehow constitutes an impropriety. (*Id.* at 18.) Second, and similar to his other objections, Plaintiff contends that the ALJ failed to explain "how those opinions were used to evaluate Plaintiff's symptom allegations in accordance with the regulatory factors." (*Id.* at 18.)

5

Plaintiff somewhat confusingly asserts that medical opinions are not factors that the agency "must consider when evaluating the intensity, persistence, and limiting effects of symptoms," while conceding that they "may inform an RFC [Residual Functional Capacity] determination." (*Id.* at 17.) Finally, Plaintiff faults the ALJ for not expressly stating "that she discounted Plaintiff's symptoms because of conflicting medical opinions or prior administrative findings." (*Id.* at 18.)

## B.    Court's Analysis

The Court agrees with Judge Speight's findings and overrules Plaintiff's Objections for reasons similar to those set forth in the R&R. The Court finds that the ALJ performed the symptom analysis required by the governing regulations and reasonably determined that Plaintiff's subjective complaints were not fully consistent with the evidence of record. In reaching that conclusion, the ALJ properly considered the objective medical evidence, Plaintiff's treatment history and his daily living activities, while also evaluating the relevant medical opinion evidence and previous administrative findings in determining Plaintiff's Residual Functional Capacity ("RFC"). Because the ALJ applied the correct legal standards in considering Plaintiff's subjective complaints and substantial evidence supports her decision, the Court overrules Plaintiff's Objections accordingly.

Plaintiff's Objections center exclusively on the alleged impropriety of the ALJ's evaluation of Plaintiff's subjective complaints and her symptom analysis. The Court therefore briefly reviews the appropriate standards before proceeding to consider Plaintiff's specific critiques.

The Fourth Circuit has described in detail the parameters by which ALJs must evaluate subjective complaints as part of the mandatory five-step process to determine whether an

6

individual qualifies as disabled under the Social Security Act.[1]  In such cases, "ALJs must use

the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p." *Arakas v. Comm'r,*

*Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020).  Under that framework, an ALJ must first

determine "whether objective medical evidence presents a 'medically determinable impairment'

that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (citing 20

C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3).  If she finds such a medically

determinable impairment, "the ALJ must [then] assess the intensity and persistence of the alleged

symptoms to determine how they affect the claimant's ability to work and whether the claimant

is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4).  In

doing so, the ALJ "must consider the entire case record." *Id.*  That includes "the objective

medical evidence; an individual's statements [concerning their] symptoms; statements and other

information provided by medical sources and other persons; and any other relevant evidence in

the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4.  An applicant's daily living

activities may also be considered as a relevant factor when evaluating symptoms.  20 C.F.R.

§ 404.1529(c)(3).  Reviewing courts consider "whether the ALJ examined all relevant evidence

and offered a sufficient rationale in crediting certain evidence and discrediting other evidence."

*Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023).  In so doing, the

ALJ "cannot simply cherrypick facts that support a finding of nondisability while ignoring

evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir.

2017).  Claimants need not produce objective evidence to satisfy this second prong of analysis.

*Arakas*, 983 F.3d at 95.

---

[1]     For a full description of the five-step process, the Court refers the reader to Judge
Speight's discussion in the R&R.  (R&R at 3–4.)

Plaintiff did not object to Judge Speight's analysis of the ALJ's finding that "Plaintiff's medically determinable impairments could lead to the alleged symptoms." (R&R at 12 (citing R. at 24).) Instead, Plaintiff's objections center on various aspects of the ALJ's findings at the second stage of the symptom evaluation inquiry. As explained more fully below, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 24.) The Court further finds that the ALJ built an "accurate and logical bridge" from this evidence to her conclusion. *Arakas*, 983 F.3d at 95 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). The Court addresses Plaintiff's objections by category of evidence.

The Court begins by considering the ALJ's reliance on the objective medical evidence. Contrary to Plaintiff's claims, the ALJ cited numerous instances where the relevant medical records contradict, rather than corroborate, Plaintiff's purportedly debilitating symptoms. This included various examples where the medical evidence documented that Plaintiff was recovering (or had recovered) successfully from the accidents and surgeries underpinning his claims. (R. at 24–25.) On the basis of her survey of these specific medical findings, the ALJ concluded that there was "no evidence of ongoing complications" from Plaintiff's hip replacement surgery, that post-surgical hardware following his lumbar spine surgery "similarly remained intact," that Plaintiff "recovered mobility with physical therapy" following that surgery, and that following treatment for arthritis, his "ranges of motion were within normal limits and strength was 5/5 in all other quadrants." (R. at 26.) The ALJ ultimately found that these "clinical and examination findings of no acute complications" support a conclusion that Plaintiff's allegations of greater restrictions "are not entirely consistent" with the appropriate RFC determination. (*Id.*) Based on

8

its *de novo* review of the ALJ's extensive discussion of the medical evidence and the conclusions drawn therefrom, the Court finds that substantial evidence supports the ALJ's finding that aspects of the record contradict, rather than corroborate, Plaintiff's account of his symptoms, and that the ALJ built an "accurate and logical bridge" from this evidence to the conclusion that she drew on its basis.

Nor does the record support Plaintiff's allegation that the ALJ minimized or omitted functional findings that would have supported Plaintiff's assertions. Among other examples, the ALJ cites medical records relating to Plaintiff's use of a walker, (*id.* at 25), Plaintiff's hip pain and degenerative changes to his hip, (*id.* at 24), advancing degenerative changes, (*id.*), decreased hip range of motion, (*id.* at 25), his need for assistance post-surgery, (*id.* (citing Exh. 8F, pg. 19)), the injuries and related symptoms that resulted from his July 2023 accident, including unsteady gait and limits on the ability to examine his lower extremities due to pain, (*id.*), sciatica, (*id.* (citing Exh. 9F, pg. 8)), poor gait and continued use of assistive devices, (*id.*) a chronic appearing longitudinal split tear in Plaintiff's left ankle, (*id.*), and a large vascular lesion and isolated chronic atrophy. (*Id.*) By considering this evidence alongside other medical findings reflecting Plaintiff's improvement and stability, the ALJ demonstrated the record's inclusion of both supportive and conflicting evidence. The ALJ's subsequent references to neutral or positive aspects of Plaintiff's medical record do not constitute an exercise in cherry-picking, but instead reflect the ALJ's efforts to corroborate and justify her conclusion that the "findings by claimant's treating and examining sources do not support the severity of restrictions" that Plaintiff alleged. (*Id.*) These findings and conclusions concerning Plaintiff's medical records document that the ALJ performed a comprehensive survey of the record and then highlighted the evidence that supports her conclusion, permitting her to build the "logical bridge" required of her by law.

*Arakas*, 983 F.3d at 95 (citation omitted.) As such, the Court overrules Plaintiff's arguments that the ALJ minimized or omitted functional findings in her analysis of the objective medical evidence and that she failed to accurately describe the evidence or build a sufficient bridge from that evidence to her conclusion.

As for Plaintiff's concerns about the ALJ's assessment of his treatment history, the Court again disagrees with Plaintiff's characterization and criticisms of the ALJ's factfinding and conclusions. As Judge Speight correctly highlighted, the ALJ considered Plaintiff's full treatment history in detail, including his surgeries and the courses of treatment that followed. (R. at 24–27.) The ALJ specifically documented Plaintiff's extensive post-surgery treatment, repeatedly citing physical therapy regimens and other "post-operative mobility training." (*Id.* at 24–25.) While Plaintiff indeed underwent several surgeries, the record supports the ALJ's finding that the vast majority of treatment obtained by Plaintiff during the relevant timeframe involved routine outpatient treatment. (*Id.* at 24–27.) In light of this record, the ALJ reasonably concluded that Plaintiff's treatment history, viewed as a whole, did not support the degree of limitation that Plaintiff alleged. Plaintiff's assertion that his surgeries "required extensive and prolonged recovery times," (Obj. at 9), fails to change the accuracy of the ALJ's assessment that his treatment history, on balance, was "conservative and grossly outpatient." (R. at 26.) On this basis, the Court finds that substantial evidence in the record supports the ALJ's conclusion as to the nature of Plaintiff's treatment history and rejects Plaintiff's argument on this point.

The Court also rejects Plaintiff's assertion that the ALJ failed to explain how this treatment history undermines his allegations concerning the severity of his pain and limitations. As discussed above, the ALJ extensively documented Plaintiff's treatment record, including repeated findings of medical progress and the absence of post-surgery complications. These

10

specific and detailed findings formed the basis for the ALJ's assessment that Plaintiff's allegations were not entirely consistent with the severity of limitations that Plaintiff alleges. (R. at 26.) The ALJ did not merely summarize Plaintiff's treatment history, but instead relied on specific evidence of documented improvement and stability to evaluate the consistency of Plaintiff's alleged symptoms. (*Id.* at 24–26.) When read in the context of the ALJ's broader discussion of the medical record, the Court finds that the ALJ's reasoning adequately explains how Plaintiff's treatment history informed her determination. The Court thus concludes that the ALJ's reasoning remains supported by substantial evidence and sufficiently provided the "bridge" required by Fourth Circuit precedent, overruling Plaintiff's objections on these grounds accordingly.

The Court next addresses Plaintiff's objections to Judge Speight's findings concerning the ALJ's consideration of his daily living activities. The Court disagrees with Plaintiff's central contention that the ALJ failed to explain how Plaintiff's activities undermined his allegations of disabling symptoms and failed to identify the specific limitations contradicted by the record. (Obj. at 13–16.) To the contrary, the ALJ directly contrasts Plaintiff's "ongoing issues with pain and mobility" with evidence that he nonetheless retained functional ability to perform various activities in his daily life. (R. at 26.) In particular, the ALJ noted Plaintiff's "capacity to care for personal hygiene needs, re-heat meals, pick up clothes using a grabber, shop for groceries using an electric cart or curbside shopping, handle his finances, read, watch television, talk on the phone and video chat with others, attend church, and maintain regular medical appointments." (*Id.* (citing Exh. 7E, pg. 5).) The ALJ expressly found that Plaintiff's ability to perform these tasks demonstrated his "capacity to otherwise perform some sedentary work" with certain limitations. (*Id.*) The ALJ further explained that Plaintiff's "allegations of greater restrictions

11

are not entirely consistent" with her RFC finding, "because they are not supported by the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, *and [Plaintiff's] stated ongoing capabilities.*" (*Id.* (emphasis added).) The absence of an explicit textual link between the ALJ's acknowledgment of Plaintiff's "stated ongoing capabilities" and her finding that such capabilities are not entirely consistent with claims of near-total incapacitation fails to undermine the validity of her conclusion, given the self-evident connection between Plaintiff's reported daily activities and the ALJ's assessment. Nor does the absence of a point-by-point assessment of how each of Plaintiff's activities undermines each of his specific allegations negate the validity of the ALJ's observation that those activities demonstrate a capacity to perform certain sedentary tasks and call into question the severity of the limitations he alleges. The ALJ reasonably relied on these activities as a factor in evaluating the consistency of Plaintiff's subjective complaints with the record as a whole. Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's alleged limitations were not fully consistent with the record in its entirety, including his daily activities.

Finally, the Court turns to Plaintiff's objections concerning the ALJ's consideration of medical opinions and prior administrative medical findings. Plaintiff objects to Judge Speight's finding that the ALJ's consideration of medical opinions and prior administrative medical findings provides substantial evidentiary support for the ALJ's symptom analysis. (Obj. at 16–19.) Plaintiff asserts that "the error is that neither the ALJ nor the Magistrate Judge explains how these [medical] opinions were used to evaluate Plaintiff's symptom allegations in accordance with the regulatory factors." (*Id.* at 18.) While Plaintiff concedes that "[m]edical opinions may

12

inform an RFC determination," he nonetheless maintains that "they do not substitute for a reasoned symptom analysis." (*Id.* at 17.)

As a threshold matter, the Court finds no fault with the ALJ's consideration of medical opinions and prior administrative medical findings in her evaluation of Plaintiff's claim, as the Social Security Administration's guidance expressly requires adjudicators to consider such evidence. *See* SSR 16-3p, 2016 WL 1119029 at *5 ("Other evidence that we will consider includes statements from . . . medical sources, and any other sources that might have information about the individual's symptoms."); *id.* at *6 (setting forth various categories of "[i]mportant information about symptoms recorded by medical sources and reported in the medical evidence"); *id.* ("Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms . . . . We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms. Adjudicators at the hearing level . . . *must consider the findings from these medical sources. . .*") (emphasis added). Accordingly, to the extent that Plaintiff suggests that the ALJ's invocation of this evidence in support of her RFC determination somehow "substitute[d] for a reasoned symptom analysis" or was otherwise improper, (Obj. at 17), the express language of SSR 16-3p and the relevant regulations plainly undermine such an argument.

As to Plaintiff's assertion that the ALJ failed to articulate how this evidence factored into her assessment, the Court again disagrees. The ALJ began by correctly specifying that she "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)." (R. at 26.) She then analyzed the opinions of three doctors, assessing their persuasiveness relative to the support provided by the

clinical record. (*Id.* at 26–27.) While acknowledging that she found one of the three opinions "more persuasive," given greater support from the clinical history and Plaintiff's "ongoing symptom complaints," she also noted that she was ultimately adopting "additional postural and environmental restrictions" beyond those recommended in that opinion, based on the "additional records" before her. (*Id.* at 26.) Notably, the ALJ's discussion of these opinions comes after her synthesis of the medical record, treatment record and daily activities evidence, as well as her conclusion that Plaintiff's "allegations of greater restrictions are not entirely consistent with the adopted residual functional capacity." (*Id.*) As such, the Court reads the ALJ's examination of the medical opinions and prior administrative medical findings as informing her RFC determination rather than her evaluation of the consistency of Plaintiff's symptoms with "the medical evidence and other evidence in the record." (*Id.* at 24.) Plaintiff's assertion that the ALJ committed error by failing to expressly state that she discounted Plaintiff's symptoms on the basis of these medical opinions therefore lacks merit. Nothing in the ALJ's decision suggests that she relied on these opinions to evaluate the consistency of Plaintiff's symptoms with the record. Rather, the structure of the decision demonstrates that the ALJ completed the symptom-consistency analysis before turning to the medical opinion evidence. The ALJ instead relied on the medical opinions in formulating the specific restrictions included in the Plaintiff's RFC, which the Court finds to be substantially supported by the evidence in the medical record and the doctors' opinions. The Court therefore overrules Plaintiff's objections concerning the ALJ's treatment of past medical opinions.

In sum, the Court finds that the ALJ applied correct legal standards and that substantial evidence supports the ALJ's symptom analysis, based on her extensive review of the record and

her reasoned explanations based thereon. Plaintiff's Objections lack merit across the board. The Court overrules them accordingly.

#### IV.   CONCLUSION

Having reviewed the record *de novo*, the Court finds that the Commissioner's final decision was supported by substantial evidence and that the ALJ employed the correct legal standards in reaching that decision. Therefore, the Court hereby ORDERS that:

1. The Report and Recommendation of the Magistrate Judge (ECF No. 18) is ACCEPTED and ADOPTED as the OPINION of the Court;

2. Plaintiff's Motion for Summary Judgment (ECF No. 14) is hereby DENIED;

3. Defendant's Motion for Summary Judgment (ECF No. 16) is hereby GRANTED;

4. The decision of the Commissioner is hereby AFFIRMED; and

5. This case is now CLOSED.

Let the Clerk file this Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated: March 19, 2026

15